**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **JAMES A. SMITH, III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:08CV736** |
| ) | |
| **BARRY LOWE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motion for Summary Judgment
(Docket No. 38) and the Defendants' Motion in Limine (Docket No. 40).  For the reasons set
forth herein, Defendants' Motion for Summary Judgment is GRANTED, and Defendants'
Motion in Limine is DENIED AS MOOT.

## I.  FACTUAL BACKGROUND

This action involves the allegations of the Plaintiff, James A. Smith, III, that he and the
Defendants were partners in a project to install and lease three industrial compressors at an
electric power plant owned by the Potomac Electric Power Company ("PEPCO"), but operated
by North American Energy Services ("NAES"); and that the Defendants breached the
partnership agreement between them when they purportedly terminated him as an independent
contractor without paying him what he asserts he was due from the alleged partnership
agreement.  (2d. Am. Compl. ¶¶ 2, 7).  Smith seeks damages in the amount of some two million

dollars and an accounting for the monies received and distributed by the Defendants in regard to the lease of the three compressors to NAES.  (Id. at Wherefore Clause).

The subject partnership agreement was allegedly formed in the Spring of 2004 upon Smith learning of a business opportunity to supply and install three industrial compressors at the electric power plant owned by PEPCO.  (Smith decl. ¶ 4; Smith dep. 274-76).  Smith contacted Defendant Barry Lowe ("Lowe") for assistance with the business opportunity because Smith could not obtain the financing necessary to buy the compressors, and because he required another to construct a facility to house the compressors.  (Smith decl. ¶¶ 6-8; Smith dep. 57-60). Smith introduced Lowe to NAES and, in effect, managed the negotiations between NAES and Lowe.  (Camerini dep. 31-33; Lowe dep. 39).

NAES thereafter contracted with Stonewall Construction ("Stonewall"), an entity for which Lowe served as the managing member, to construct a structure to contain two of the compressors and to install all three compressors.  (Lowe decl. ¶ 11, Exhibit 1).  Defendant J. Davis Holding Company ("J. Davis"), a company for which Lowe was also the managing member, obtained a three-year loan and purchased the compressors with the loan proceeds.  (Id. at ¶ 12, Exhibits 2, 3).  Smith was not a borrower or guarantor on the loan.  (Id.).  J. Davis then leased the compressors to NAES for an initial term of five years pursuant to a so-called BOOM agreement, which is a lease by which the leased equipment is built, owned, operated and maintained by the lessor.  (Id. at ¶ 13, Exhibit 4).  Smith was not a party to the lease.  (Id.).

According to the Defendants, Smith's job was "to maintain the compressors and keep the customer, NAES, happy."  (Id. at ¶ 16).  After Lowe received an email from NAES on June 24, 2008, indicating ongoing problems with the reliability of the compressors and with an inability

of NAES to reach Smith when needed, Lowe terminated Smith by letter, dated July 1, 2008, citing Smith's inability and/or unwillingness to properly service the compressors.  (Id. at ¶¶ 19-21, Exhibit 6).

Although the agreement between Smith and Lowe was never reduced to writing, it is undisputed that they agreed to split the profits equally after the loan, insurance premiums, and taxes had been paid, as well as money that had been set aside for a maintenance reserve fund, and fifteen percent of the lease payment had been paid to J. Davis to satisfy overhead expenses. (Smith decl. ¶ 16; Lowe decl. ¶ 16; 2d Am. Compl. ¶ 5(c); Smith dep. 134-43).  Such terms are memorialized in emails between Smith and Lowe that were transmitted in May 2004.

Smith relies on the May 2004 emails, in addition to the parties' course of conduct, as proof of the existence of, and the terms of the alleged partnership agreement.  For instance, in an email, dated May 24, 2004, Lowe states:

> It has been my thought that when the project is completed to write you a check for your portion (or to some entity you have).  To put you on payroll would only drive up my cost because of insurances and misc taxes that are paid.  I think the simpler and cleaner we keep it the better.

(Pl.'s Exhibit 1).  In a later email sent on the same day, Lowe states: "It was my intention for us to split the profits above our quoted numbers, that is the way we have always done it in the past." (Id.).  When questioned by Smith whether Smith and Lowe would both own the compressors, Lowe responded:

> J. Davis will own the units and the bank will have a lien on them due to the assets I am having to use as collateral.  It was my intention to take the direct cost of bank note, insurance and A/C maintenance then add 15 percent mark-up for overhead and handling and everything else would be split between us.

3

(Id.).  However, in an email forwarded by Lowe to Smith later on October 11, 2007, Lowe informed Smith that the loan would be paid off that December and that "[f]or your efforts and continued good job of looking after maintenance and operations you will receive 15,885.22." (Smith dep., Exhibit E).

## II.  PROCEDURAL HISTORY

Smith instituted an action for breach of contract in the Circuit Court of the City of Richmond, Virginia against Lowe, J. Davis, Stonewall and Quality Mechanical Contractors, Inc. ("Quality") (also involved in the construction phase and associated with Lowe).  The Defendants removed the case on the basis of diversity of citizenship jurisdiction.  Smith thereupon moved for voluntary dismissal in this court without prejudice of Defendants J. Davis, Stonewall, and Quality, and those defendants were dismissed by Order of the Court.  (Order, Nov. 24, 2008). Smith thereafter amended his complaint twice with the consent of Defendant Lowe.  (Docket Nos. 10, 21).  The parties then consented to Magistrate Judge jurisdiction and Smith moved to amend his complaint yet again, which motion was granted.  (Order, Apr. 29, 2009).  The Second Amended Complaint reinstated Smith's claim for breach of contract against the previously dismissed Defendant J. Davis.  Lowe and J. Davis then jointly filed the instant motion for summary judgment and motion in limine.  The matters have been fully briefed and argued, and are ripe for review.

# III.  ANALYSIS

## A.      Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.  Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48 (emphasis in original).  Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of

5

evidence," or the appearance of some "metaphysical doubt" concerning a material fact.  Lewis v. City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis.  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor.  Anderson, 477 U.S. at 248.

**B.     Smith's Breach of Contract Claim**

The Defendants assert that Smith cannot prove the existence of a partnership agreement and, accordingly, cannot establish that the Defendants breached any legally enforceable obligation to him.  (Mem. Supp. Mot. 8, 11-14).  The test as to the existence of a partnership agreement which is applicable between the parties themselves, as opposed to between the alleged partnership and third persons, is that "a partnership is formed and exists only when it was the intention of the parties that they should be partners."  Kennedy v. Mullins, 155 Va. 166, 174, 154 S.E. 568, 570 (1930).  The Virginia Supreme Court has stated in this regard that:

> Partnership contracts, like other contracts, are governed by the intention of the parties.  Every partnership rests on the mutual consent of the members.  This

6

intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction.

Id.

The Virginia Uniform Partnership Act, Va. Code Ann. § 50-73.88(A), defines a partnership as "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership."  The Act provides guidance for determining whether a partnership is formed.  For instance, the Act provides that "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property;" and further that "[a] person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [f]or services as an independent contractor or of wages or other compensation to an employee."  Va. Code Ann. § 50-73.88(C).

The Virginia Supreme Court has expounded upon the framework of the Virginia Uniform Partnership Act, stating that "to carry on" as co-owners of a business for profit is a well defined term, meaning: "the conduct of a business for a sustained period for the purposes of livelihood or profit and not merely the carrying on of some single transaction."  Walker, Mosby & Calvert v. Burgess, 153 Va. 779, 787, 151 S.E. 165, 167 (1930) (citing Cooper Mfg. Co. v. Ferguson, 113 U.S. 727 (1885); Home Lumber Co. v. Hopkins, 107 Kan. 153, 190 Pac. 601 (1920) (holding that the sale of shares of stock in a trust is not the "doing of business" within the meaning of a partnership); see also Kiszely v. Yi, 70 Va. Cir. 364 (2006) (applying Burgess).  For example, in Burgess, the Plaintiff, Walker, Mosby and Calvert, Inc., owned three lots of land and contracted

7

by written agreement with one J. W. Senseney to construct a house on each lot.  Burgess, 151

S.E. at 166.  According to the written agreement, the Plaintiff would provide the land and the

capital to be used in the construction of three dwellings, and Senseney would supply the material

and labor to construct the dwellings.  Id.  The agreement further provided that each of the three

houses could be sold by either party to the agreement, that the party making the sale would

receive a commission for the sale, and that after all three houses had been sold, the profits or

losses would be shared equally by the Plaintiff and Senseney.  Id.  Despite the parties' agreement

to share the profits from the sale of the houses, the Virginia Supreme Court held that the written

agreement between Senseney and the Plaintiff did not constitute a partnership agreement because

the parties had not agreed to "carry on as co-owners of a business for profit."  Id. at 167.  Rather,

the court considered their arrangement to be a single transaction.  Id.  For that reason, and for the

further reason that there was no language in the agreement indicating that the Plaintiff and

Senseney were co-owners of the property, the Court held that Senseney was simply an

independent contractor who was to only be paid a share of the profits.[1]  Id.

Here, Smith and Lowe agreed to work jointly on the installation, lease and, maintenance

of the three compressors.  Although the lease agreement was intended to last for five years, and

could be renewed by NAES at the end of the term, it would nevertheless end at some point at the

option of NAES.  Neither Smith nor the Defendants have presented evidence or argued that they

---

[1] The Court notes that the Virginia Supreme Court's holding in Burgess, that a partnership cannot be based on a single transaction, is the minority rule.  See J. William Callison & Maureen A. Sullivan, Partnership Law and Practice: General and Limited Partnerships § 5:8 (West 2009) (noting that other jurisdictions recognize partnerships that exist for a particular purpose and dissolve when the purpose is completed).  It is, nonetheless, the rule in Virginia and thereby applicable to this action.

ever contemplated similar endeavors for the future, or that they would join in similar activity involving the purchase of additional compressors for NAES, or any new client. Accordingly, the business relationship would necessarily end with the termination of the lease with NAES.[2]

Smith attempts to distinguish the facts of <u>Burgess</u> from those before the Court by asserting that in <u>Burgess</u> the parties agreed to construct and sell three homes only, but here the parties rented and installed temporary compressors, erected a building to house them, purchased and installed new compressors, and entered into a five year lease with a renewal option. (Pl.'s Resp. 11). According to Smith, the partnership would not have ended but for the fact that Smith was "fired." (<u>Id.</u>). It is true that the intended duration of the business relationship between Smith and the Defendants was for a longer period of time than that contemplated by the parties to the agreement in <u>Burgess</u>. It is also true that the agreement between Smith and the Defendants contemplated multiple phases, whereas the agreement in <u>Burgess</u> involved only the construction of houses and the sale thereof. However, neither of these circumstances negates the fact that the agreement between Smith and the Defendants was for a defined period of time with a single client, and would end unless it was renewed by NAES, the third party. Accordingly, Smith and the Defendants did not agree to conduct business for a sustained period for the purposes of livelihood or profit; rather, their business relationship was based on but a single transaction.

Moreover, it does not appear from the undisputed facts that the parties shared a community interest in the compressors as property of the alleged partnership. Co-ownership of partnership property is an "essential element" of a partnership. <u>Burgess</u>, 151 S.E. at 167.

---

[2] Where the Court concludes that the arrangement between Smith and Lowe did not constitute a partnership to begin with, the Court does not deem it necessary to discuss issues involving the Statute of Frauds as to the details of any such arrangement.

Although Lowe used the proceeds of the lease with NAES to make payments on the bank note for the compressors, it is undisputed that the loan and the lease were both executed in the name of J. Davis and Smith was not a party to either agreement.  Furthermore, when Smith asked Lowe in an email who would own the compressors, Lowe responded that J. Davis owned them, and Smith did not object to Lowe's response.

Smith argues in response that he and Lowe agreed to share the profits from the lease after the deduction of all expenses, including payments on the indebtedness incurred to purchase the compressors, and that he therefore shared an ownership interest in them.  Although the sharing of profits can create a presumption of a partnership, as the Court noted in Burgess, it is not a conclusive test and is not sufficient to overcome the counter-assertion that he was receiving a share of the profits as compensation for his services as an independent contractor.  See id.; Va. Code. Ann. § 50-73.88(C).[3]  Inasmuch as Smith has not demonstrated that he and the Defendants intended to "carry on as co-owners a business for profit" beyond a single transaction, or that they were outright co-owners of the compressors, as opposed to having an indirect interest insufficient to constitute an outright co-ownership, the Defendants are entitled to summary judgment.

---

[3] The Court notes as an aside that where, according to representations made at oral argument, Smith purportedly received some fourteen thousand dollars ($14,000) each month for at least three years, his "share" of over half a million dollars does not seem to be inequitable, even though he has not sought equitable relief on any concept of quantum meriuit.

**IV.  CONCLUSION**

For the reasons discussed herein, Defendants' Motion for Summary Judgment (Docket

No. 38) is GRANTED, and Defendants' Motion in Limine (Docket No. 40) is DENIED AS

MOOT where it concerns possible trial issues that will now be cancelled.

An appropriate Order shall issue.

_____/s/_____

Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: 9/9/09